**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| FRANK CAMINITI, | : |
| | : |
| | : |
| Plaintiff, | : **OPINION** |
| | : |
| v. | : Civ. No. 04-4276 (WHW) |
| | : |
| THE COUNTY OF ESSEX, NEW JERSEY, | : |
| | : |
| Defendant. | : |
| | : |
| | : |
| | : |

**Walls, Senior District Judge**

 Plaintiff Frank Caminiti brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, alleging that his former employer, the County of Essex, failed to compensate him for overtime work spent maintaining and caring for canines at his home.

 Defendant now moves for summary judgment on the whole Complaint and in the alternative, for partial summary judgment on four issues. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides this matter on the basis of the written submissions of the parties. Summary judgment is granted in part, denied in part.

**FACTUAL BACKGROUND**

 Plaintiff Frank Caminiti ("Caminiti") joined Defendant Essex County's ("the County") K-9/Bomb Unit in March 1988 as a K-9 officer. K-9 officers typically spend their week

-1-

**NOT FOR PUBLICATION**

patrolling assigned areas with the dogs and being on-call. They are encouraged to live with the dogs to promote bonding between the animal and officer. Plaintiff claims that he spent, on average, twenty-one hours per week caring for and maintaining the dogs, including activities such as: Lyme treatments; vacuuming; bathing, walking, grooming, and feeding the dogs; cleaning the K-9 vehicle; trimming the dogs' nails; and removing dog waste.

It is disputed whether Caminiti complained to the County about not being compensated for at-home care of the canines. Plaintiff claims that he had a meeting with Donald Brown ("Mr. Brown"), the Director of Administrative Services in the Sheriff's Office, to discuss his desire to be compensated for this at-home care. However, Mr. Brown claims that he does not remember this meeting. Caminiti also claims that he complained to Chief Dickshied in November 1996.

Caminiti's assignment with the K-9/Bomb Unit ended in October 2003. However, from May 31, 2003 to October 2, 2003, Caminiti utilized sick, personal, and vacation days and therefore did not work.

The Sheriff's Officers in Essex County are represented by a local union, PBA Local 183. PBA Local negotiates collective bargaining agreements for all of the County's officers, but negotiates separate "side agreements" for the K-9 officers regarding compensation for extra work they perform, including weekend kennel cleanup duty. The County claims, and Caminiti disputes, that there were four agreements governing Plaintiff's compensation for the at-home care and maintenance of the dogs.

1. *Alleged 1991 Agreement*

-2-

NOT FOR PUBLICATION

The alleged 1991 agreement is an agreement that established a "pilot program" to run for two years, ending April 1, 1993. The agreement designated officers working with canines as detectives, and recognized that the officers receive special training regarding their dogs' specialties (detection of bombs, drugs, arson, etc.). The agreement also states that whichever detective is assigned to weekend kennel duty (only one officer per weekend, for one weekend day) will be paid eight hours straight time for such duty. This agreement is signed by both PBA Local representatives and Essex County representatives.

2. *Alleged 1995 Agreement*

The alleged 1995 agreement is a letter from PBA Local President James Cramer to Sheriff Armando Fontoura, recognizing that the pilot program lapsed. The letter contains proposed "changes [which] are being submitted for [Fontoura's] review and consideration." Hannon Cert., Exhibit F. The letter reiterates the eight hours straight pay for weekend duty, but designates that two officers will work; one on Saturday and one on Sunday. It also establishes time and one half pay for overtime, holiday, and on-call/standby time. This letter is signed only by the author, James Cramer.

3. *Alleged 1997 Agreement*

The alleged 1997 agreement is a letter from PBA Local 183 to Sheriff Fontoura, outlining proposed changes for the compensation policy of the K-9/Bomb Unit due to the expiration of the pilot program. Paragraph three states that each detective is responsible for care and maintenance of the canines housed at the K-9 unit on an occasional Saturday or Sunday, for which the detective will be paid eight hours: four hours are compensation for the time it takes to care for

-3-

**NOT FOR PUBLICATION**

and maintain the K-9 unit, and the other four hours "[are] compensation for the weekly care and maintenance of his K-9."

Paragraph five states that "[e]mployees of the K-9/Bomb Unit shall work a (7) seven hour work day as compensation for weekday on call or standby time."

4. *Alleged 1999-2000 Contract*

The alleged 1999-2000 contract is a letter from Frederick T. Danser, III of Apruzzese, McDermott, Mastro & Murphy Law Offices, to Richard D. Loccke, Esq. It purports to set forth terms of a new agreement. The letter reiterates the four hours of K-9 duty, for which the officers are paid eight hours, but differs because it specifically addresses overtime work under the FLSA. Paragraph three states:

> If, however, the weekend and weekly care and maintenance work when combined with other work performed by the Canine Detectives requires overtime compensation under the provisions of the Fair Labor Standards Act (as distinguished from the labor contract) such overtime compensation shall be paid in addition to the compensation provided for herein.

Hannon Cert., Exhibit H. Paragraph five restates the reduction from an eight hour workday to a seven hour workday "for weekday on-call or standby time. . . ."

The letter instructs Mr. Loccke to "have [his] client sign this letter agreement so that it can become part of the contract between the parties." There are spaces for signatures of various Sheriffs and County Executives, as well as an accompanying "attest" line for each. The document provided to the Court has no signatures.

**PROCEDURAL HISTORY**

Plaintiff filed this action on September 1, 2004. The Complaint begins with a brief factual

**NOT FOR PUBLICATION**

background, outlining Caminiti's work with the County and his duties as a K-9 officer. Plaintiff admits that he worked in seven day cycles, with five days of work and two days off. The only count contained in the Complaint states that the County violated the FLSA. For this violation, Plaintiff asks for back pay, liquidated damages, interest, attorneys' fees, and costs.

The parties proceeded with discovery and on April 27, 2007, Defendant moved for summary judgment.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The

NOT FOR PUBLICATION

opposing party must set forth specific facts showing a genuine issue for trial and may not rest

upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d

Cir. 2001). The material fact or facts become genuine when a reasonable trier of fact could render

a verdict for the non-moving party. Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219 n.3

(3d Cir. 1988), cert. denied, 490 U.S. 1098 S.Ct. 2449 (1989).

At the summary judgment stage, the court's function is not to weight the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences

in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir.

2002).

## DISCUSSION

### 1. Statutory Background

Congress passed the Fair Labor Standards Act ("FLSA") in 1938 "'to achieve a uniform

national policy of guaranteeing compensation for all work or employment engaged in by

employees covered by the FLSA.'" Albanese v. Bergen County, 991 F. Supp. 410, 418 (D.N.J.

1997) (quoting Tenessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602

(1944)). The Act was passed in the wake of the Great Depression to protect workers from

"substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight System,

Inc., 450 U.S. 728, 739 (1981). The statute entitles employees to "broad access to the courts" and

there are no exhaustion requirements. Id. "The backbone provisions of the FLSA are its

minimum wage and overtime requirements." Lamon v. Shawnee, 972 F.2d 1145, 1150 (10th Cir.

-6-

NOT FOR PUBLICATION

1992). The FLSA states in relevant part:

> Except as otherwise provided in this section, no employer shall employ
> any of his employees . . . for a workweek longer than forty hours unless
> such employee receives compensation for his employment in excess of
> the hours above specified at a rate not less than one and one-half times
> the regular rate at which he is employed.

29. U.S.C. § 207(a).

In 1947, Congress amended the FLSA by enacting the Portal to Portal Act. 29 U.S.C. §§

251-262. The general purpose of the Act was to limit employer liability because the enforcement

of the FLSA was adversely affecting employers' financial stability. Accordingly, the Act added a

statute of limitations period, which is discussed more fully below, and gave judges discretion in

awarding liquidated damages. 29 U.S.C. § 255(a).[1]

The FLSA did not apply to state and local governments until the U.S. Supreme Court

overruled Nat'l League of Cities v. Usery, 426 U.S. 833 (1976), and held that the FLSA does

apply to state and local employees. Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528

(1985). Although state and local employees are now protected by the FLSA, Congress amended

the FLSA to create an exemption. Section 207(k) partially exempts public agencies from section

207(a)'s overtime compensation requirement if an alternative work period of seven to twenty-

eight days is both established and regularly recurring. Section 207(k) reads:

> No public agency shall be deemed to have violated subsection (a) of
> this section with respect to the employment of the employee in fire
> protection activities or any employee in law enforcement activities . .
> . if-- . . .
>     (2) in the case of such an employee to whom a work period of at
>     least 7 but less than 28 days applies, in his work period the

---

[1]  The FLSA previously mandated double pay as liquidated damages.

-7-

NOT FOR PUBLICATION

> employee receives for tours of duty which in the aggregate exceed
> a number of hours which bears the same ratio to the number of
> consecutive days in his work period as 216 hours . . .
> compensation at a rate not less than one and one-half times the
> regular rate at which he is employed.

Section 207(k) is a "partial exemption" because it does not release the agencies from their

obligation to pay overtime compensation altogether, but rather sets a higher threshold of hours

that an employee must work before overtime compensation is due. The C.F.R. provides a table

which sets forth these thresholds. 29 C.F.R. § 553.230(c). The threshold for law enforcement

employees who work a regularly recurring alternative work period of seven days is forty-three

hours in that seven day period.

### 2. Motion to Dismiss the Whole Complaint

The Court recognizes that an officer's at-home care of canines is compensable work

under the FLSA. Albanese v. County of Bergen, 991 F. Supp. 410 (D.N.J. 1997). Defendant

argues that it is entitled to summary judgment because the County already compensated Caminiti

for his at-home care of the dogs pursuant to collective bargaining agreements. Specifically,

Defendant claims that it compensated Caminiti for at-home care by reducing the eight hour

workday to a seven hour workday, and by paying eight hours compensation for a four hour shift

spent maintaining the K-9 Unit on kennel duty.

While courts have generally recognized that collective bargaining agreements which

provide reasonable compensation up-front can relieve an employer from paying overtime,[2] the

---

[2] See Rudolph v. Metro. Airports Comm'n, 103 F.3d 677, 684 (8th Cir. 1996) (holding
that an employee can only be compensated for overtime if the agreement provided an
"unreasonably short amount of time" to perform the tasks and the employer knew the time was
too short).

**NOT FOR PUBLICATION**

Court finds that there is a question of material fact regarding whether the collective bargaining agreements did in fact compensate Caminiti for the at-home care of the canines.

Of the four collective bargaining agreements in the record, only the alleged 1997 agreement and the alleged 1999-2000 contract are applicable to the statute of limitations period. The alleged 1997 agreement is a letter between PBA Local 183 and Sheriff Fontoura, proposing changes to the K-9/Bomb Unit compensation policy, and therefore is not binding on the parties. The alleged 1999-2000 contract provided to the Court has lines for signatures but is not signed. In addition to the lack of signatures, the alleged contract specifically states that the terms are not to supersede overtime compensation mandated by the FLSA. Accordingly, a reasonable jury could draw the inference that the compensation provided in the alleged contract was not meant to be the sole source of overtime compensation regarding the dogs.

Although the County claims that the workday was reduced to seven hours to compensate for at-home care of the canines, the Court finds that there is a question of material fact regarding this matter. Both the alleged 1997 agreement and the alleged 1999-2000 contract refer to the reduction to a seven hour work day as compensation *for standby/on-call time*. Further, Caminiti points to the deposition testimony of Chief Dough and Mr. Brown, both of whom recognize that the seven hour work day was meant to compensate on-call or standby time, not at-home canine care.

Although the eight hour pay for the four hour shift is expressed as compensation for canine care, it is disputed whether it was for care at the K-9 unit or at-home care. Further, both Chief Dough and Mr. Brown testified that there was no overtime compensation scheme in place

**NOT FOR PUBLICATION**

during the statute of limitations period for the at-home care of the dogs.

The record clearly contains genuine issues of material fact. It cannot be said that as a matter of law Plaintiff was properly compensated for his overtime work. Not only are the alleged agreements questionable as binding instruments, but the terms therein are in dispute. Defendant has not met its burden of establishing that it is entitled to judgment as a matter of law, and Plaintiff has met his burden of producing evidence of genuine issues of material fact. Accordingly, summary judgment on the whole Complaint is denied.

### 3. Statute of Limitations

As a general rule, a two year statute of limitations applies to FLSA claims. 29. U.S.C. § 255(a). The statute of limitations is extended to three years after the cause of action accrues if the employer willfully violated the FLSA. Id. The cause of action accrues for purposes of the FLSA "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). "A willful violation occurs when 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" Albanese, 991 F. Supp. at 425 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).

The County relies on three main cases to support its position that, as a matter of law, it did not willfully violate the FLSA.[3] All three are distinguishable because in each case the

---

[3] Jerzak v. City of South Bend, 996 F. Supp. 840, 849 (N.D. Ind. 1998) (holding that for proof of a willful violation, the employee must do more than make a mere assertion that the employer knew of the FLSA violation); Levering v. District of Columbia, 869 F. Supp. 24 (D.D.C. 1994) (holding that because the employer was not notified or made aware of the fact that the K-9 care took longer than the time allotted by the compensation already given, there was no willful violation); and Andrews v. DuBois, 888 F. Supp. 213, 220 (D. Mass. 1995) (holding that

NOT FOR PUBLICATION

plaintiffs were either moving or cross-moving for summary judgment and therefore bore the

burden of proving as a matter of law that the employer willfully violated the FLSA. Although

each court found that the plaintiffs failed to meet their burden, the analysis is not applicable to

the present case. Here, only the County has moved for summary judgment and Caminiti's only

burden is to show that a dispute of material fact exists regarding whether the violation was

willful. At this time Plaintiff does not bear the burden of proving that the violation was willful

because he has not cross-moved for summary judgment. Further, the County relies on the

assumption, which this Court rejects at this stage, that Caminiti was already compensated by the

collective bargaining agreements when it discusses Levering v. District of Columbia, 869 F.

Supp. 24 (D.D.C. 1994) (holding that the employer did not willfully violate the FLSA as a matter

of law, because the dispute focused on the amount of time given for at-home care, not whether

compensation was given). Because of Defendant's misplaced reliance on an assumption that the

Court does not accept, Levering is not applicable.

        Plaintiff puts forth sufficient evidence to demonstrate a dispute of material fact regarding

the willfulness of the violation. Plaintiff has met his burden by pointing to the deposition

testimony of Chief Dough, in which he admitted to being aware that the FLSA applied to K-9

officers, and also to the alleged 1999-2000 contract, which refers explicitly to the FLSA, thus

putting the managers on notice. Accordingly, summary judgment on the statute of limitations is

denied.

        **4. Liquidated Damages**

_____

for purposes of a willful violation analysis, it is not dispositive that the FLSA applies and upper
managers are aware of the FLSA's requirements).

**NOT FOR PUBLICATION**

The FLSA entitles claimants to liquidated damages. The FLSA states:

> Any employer who violates the provisions of Section 206 or Section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover [liquidated damages] may be maintained against any employer (including a public agency).

29 U.S.C. § 216(b). The effect of this section is to double the damages because it calls for "an additional equal amount as liquidated damages." Id. Liquidated damages under the FLSA are compensatory, not punitive in nature. The reason for doubling the damages is to "compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Brooks v. Village of Ridgefield, 978 F. Supp. 613, 619 (D.N.J. 1997) (quoting Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982)).

The 1947 amendment to the FLSA changed the liquidated damages provision to allow for judicial discretion in awarding liquidated damages if the employer acted reasonably and in good faith. The amendment states:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The defendant has the burden of proving by "plain and substantial proof" that it acted in good faith and had reasonable grounds for believing that it was not violating the FLSA. See Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991).

-12-

NOT FOR PUBLICATION

In Burgess v. Catawba County, the Western District of North Carolina held that a finding of "good faith" for purposes of liquidated damages precludes a finding of willfulness for purposes of a three year statute of limitations period, and vice versa. 805 F. Supp. 341, 351 (W.D.N.C. 1992). Therefore, if the Court finds as a matter of law that the County acted in "good faith" (as Defendant asks in the previous summary judgment point), then the Court cannot find that the Defendant was willful for purposes of liquidated damages.

Defendant cites Jerzak for the proposition that a court should deny liquidated damages when the employer believed it had properly compensated the employee. In Jerzak, the employer posted portions of the FLSA for employees to reference, in addition to notifying the employees of the § 207(k) election and expressly stating that the seven hour work day was meant as compensation for at-home care of the canines. 996 F. Supp. at 850. The Jerzak court denied liquidated damages because it found that as a matter of law, the defendant had demonstrated its good faith and reasonable efforts. 996 F. Supp. 840. Defendant's reliance on Jerzak is misplaced. As discussed, this Court is unwilling to assume as a matter of law that the collective bargaining agreements compensated Caminiti. Therefore, it is improper to analogize the present case to Jerzak.

Plaintiff advances Albanese for the proposition that a showing of good faith requires "plain and substantial proof" of affirmative steps to ascertain the FLSA's requirements. Albanese, 991 F. Supp. at 425. Unlike the employer in Jerzak, Defendant has failed to offer evidence that it took affirmative steps to ascertain the FLSA's requirements.

-13-

NOT FOR PUBLICATION

This Court has already found that there is an issue of material fact regarding whether the County willfully violated the FLSA. By the same reasoning, the Court finds that the County has not demonstrated that it acted in good faith as a matter of law. See Burgess v. Catawba County, 805 F. Supp. 341, 351 (W.D.N.C. 1992) (holding that a finding of "good faith" for purposes of liquidated damages precludes a finding of willfulness for purposes of a three year statute of limitations period, and vice versa). Accordingly, summary judgment on the liquidated damages claim is denied.

### 5. Section 207(k) Exemption

The FLSA entitles employees to overtime compensation if they work more than forty hours per week, unless the employer establishes that it is partially exempt under 29 U.S.C. § 207(k). To qualify for an exemption, the employer must prove by a preponderance of the evidence that it has (1) established a work period; and (2) that the work period is regularly recurring, as defined by Section 207(k). See McGrath v. City of Phila., 864 F. Supp. 466, 474 (E.D. Pa. 1994). A work period for purposes of the 207(k) exemption is not equated with a work week or pay period. Instead, it must be an "established and regularly recurring period of work . . . and it need not coincide with the duty cycle or pay period." 29 C.F.R. § 553.224(a). A work period is generally categorized by the cycles of days worked and the amount of days off. See id. (officers worked regularly recurring "flex schedules" of five days on, two days off, then four days on and two days off, establishing a thirteen day work period).

If an exemption is established by the employer, the threshold number of hours that must be worked before overtime compensation is due is calculated according to a table in 29 C.F.R. §

-14-

NOT FOR PUBLICATION

553.230(c). As example, law enforcement employees working seven day work period cycles must work forty-three hours in that work period before being entitled to overtime compensation. Id.

When computing the number of hours worked for purposes of overtime compensation, time spent "on vacation, holiday, illness, . . . or other similar cause . . . may not be credited toward overtime compensation." 29 C.F.R. § 778.218.

Parties cannot contract away FLSA rights. Birdwell v. Gadsden, 970 F.2d 802, 806 (11th Cir. 1992). An employee retains all rights afforded by the FLSA and an employer retains the right to a 207(k) exemption once it has been established, regardless of collective bargaining agreements. See McGrath, 864 F. Supp. at 474; Birdwell, 970 F.2d at 806.[4]

The Eastern District of Pennsylvania is the only court in the Third Circuit that has addressed the requirements for establishing a 207(k) exemption. McGrath, 864 F. Supp. 466. In its analysis, the McGrath court cites cases from the Tenth and Eleventh Circuits (which will be discussed in turn), and heavily relies on the reasoning of those Circuits. The plaintiffs in McGrath worked a "6-2 schedule" and were paid pursuant to a collective bargaining agreement. The city announced the adoption of a new "flex schedule" which was a thirteen day rotation (five days of work with two days off, then four days of work with two days off). Id. at 470-71. The court found that the City of Philadelphia's announcement of the adoption of the "flex schedule," could lead a reasonable trier of fact to find the establishment of a 207(k) work period. Following

_____

[4] Although a collective bargaining agreement may entitle employees to overtime compensation before the threshold is reached, the employer can still claim a 207(k) exemption for FLSA purposes. The employee retains a right, however, to bring a breach of contract claim against the employer for breach of the collective bargaining agreement.

NOT FOR PUBLICATION

the Tenth and Eleventh Circuits, the court held that the collective bargaining agreements, which

allowed for overtime compensation after forty hours had been worked in a work week, were not

dispositive and did not preclude the finding of a 207(k) exemption. Id. at 477. The court also

stressed that whether a 207(k) work period has been established is a jury question, but that "a

certain set of facts, if undisputed, may support only one inference. . . . Under such circumstances,

it would be appropriate for the court to decide the 207(k) issue by way of summary judgment."

Id. at 478. Ultimately, the court denied the plaintiff's motion for summary judgment that the City

of Philadelphia had not established a 207(k) exemption and sent the question to a jury.

In Birdwell v. Gadsden, the Eleventh Circuit focused on the cycles *actually worked* by the

officers, rather than overtime provisions in collective bargaining agreements. 970 F.2d 802 (11th

Cir. 1992). The officers in Birdwell worked seven day cycles. Despite the fact that their

collective bargaining agreement entitled the officers to overtime compensation if they worked

over forty hours in one week, the Birdwell court reversed the district court's holding that as a

matter of law, a 207(k) exemption did not apply. Because the officers *actually worked* seven day

cycles, the Eleventh Circuit held that the City of Gadsden produced enough evidence to let a jury

decide if it had established the exemption. The court noted, however, that if the plaintiffs failed

to present evidence at trial contradicting the seven day work period, a directed verdict in favor of

the City of Gadsden would be proper.[5]

---

[5]The Birdwell court drew a distinction between a collective bargaining agreement and the
FLSA by holding that although the 207(k) exemption had been established (therefore no
violation of the FLSA), the City was in breach of contract and therefore still had to pay overtime
compensation.

-16-

NOT FOR PUBLICATION

In <u>Lamon v. Shawnee</u>, the Tenth Circuit similarly found that an employer's policy for paying overtime compensation and the employer's pay periods do not preclude the establishment of a 207(k) work period. 972 F.2d 1145 (10th Cir. 1992). The <u>Lamon</u> court stated that "other than adopting a specified work period, the employer is not required to restructure its overtime payment practices whatsoever; the employer has the option to do so." <u>Id.</u> at 1152. The court further stated that "there is nothing improper about a state or local-government employer adopting the subsection (k) framework in order to take advantage of that subsection's provisions." <u>Id.</u> The plaintiffs in <u>Lamon</u> sought overtime compensation for working during meal time. The jury found that the plaintiffs were entitled to compensation. However, the jury also found that the City of Shawnee had established a twenty-eight day work period, and therefore the plaintiffs were only awarded their regular rate of pay for the extra hours because they had not reached the threshold of 171 hours per work period. The Tenth Circuit upheld the jury's finding that a 207(k) exemption had been established, despite a biweekly pay period. The Tenth Circuit also noted that the City of Shawnee had adopted an Administrative Code provision which set forth its 207(k) exemption, thus putting the employees on notice. <u>Id.</u> at 1148.

Defendant argues that it established a 207(k) exemption and is therefore entitled to summary judgment for those weeks that Plaintiff worked less than forty-three hours.[6] Although Plaintiff now disputes that a 207(k) work period has been established, Defendant notes that Plaintiff's Complaint specifically asks for overtime for all weeks in which Caminiti worked more

---

[6] Law enforcement employees working seven day work period cycles must work forty-three hours in that work period before being entitled to overtime compensation. 29 C.F.R. § 553.230(c).

NOT FOR PUBLICATION

than forty-three hours. The County argues that Plaintiff has conceded that the 207(k) exemption

was properly established. However, *legal* conclusions are not deemed judicial admissions.

Giannone v. U.S Steel Corp., 238 F.2d 544, 547-48 (3d Cir. 1956). Paragraph nine of Plaintiff's

Complaint states in relevant part:

> The FLSA provides that law enforcement officers assigned a work
> period of seven (7) days are entitled to time and one-half of pay
> after working forty-three (43) hours in a given seven (7) day
> cycle.

There are no factual claims in the paragraph which can be deemed judicial admissions.

Accordingly, Plaintiff did not concede that a 207(k) exemption has been established.

Caminiti does not dispute that the officers worked a 5-2 schedule in regularly recurring

cycles; in fact, he admits it in his Complaint. Also, Plaintiff's argument that the County's policy

of paying overtime on a day-by-day basis precludes a finding of a 207(k) exemption is irrelevant.

See Lamon, 972 F.2d at 1152.

The only two requirements for establishing a 207(k) work period are that the employer (1)

establish an alternative work period; and (2) that the work period is regularly recurring. Here,

there is neither a dispute about the length of the work period (seven days) nor that it was

regularly recurring. The issue is whether the first prong has been fulfilled: whether an alternative

work period has been established.

The Court is not bound by the Eleventh Circuit, nor the Eastern District of Pennsylvania.

The purpose of the FLSA is to protect employees. The Eleventh Circuit's standard lessens that

protection by imposing the lax standard of only requiring that the employee *actually work* the

alternative work period in order for it to be established. Further, courts have strongly urged that

-18-

NOT FOR PUBLICATION

the question of whether a 207(k) exemption has been established should be left to the jury. Id.

Accordingly, this Court denies summary judgment and will allow a jury to determine whether a

207(k) exemption has been established.

Defendant points to ten weeks throughout the statute of limitations period in which

Plaintiff worked less than forty hours, even with twenty-one hours added per week for at-home

care of the K-9s. Despite the 207(k) exemption argument, Plaintiff is not entitled to overtime

compensation for weeks in which he worked less than forty hours. Because Plaintiff fails to meet

his burden of showing a dispute of material fact regarding the amount of hours he worked, this

Court grants summary judgment for those ten weeks.[7]

### 6. Weeks that Plaintiff did not Work

In addition to the ten weeks that Plaintiff worked less than forty hours, the County moves

for summary judgment to dismiss Plaintiff's claim for overtime for the period of May 31, 2003 to

October 2, 2003. Defendant claims that Plaintiff utilized vacation and sick days consecutively

during this period and did not work. Defendant makes this claim based on attendance records

produced by Mr. Brown, the Director of Administrative Services at the Sheriff's Office, at his

deposition testimony.

Plaintiff does not specifically dispute Defendant's claim that he did not work during this

time period, but calls Mr. Brown's credibility into question regarding the attendance documents

---

[7] Hours worked per work period (including time allotted for at-home care and maintenance of the K-9s) for the weeks in which summary judgment is granted: December 22, 2001: 28 hours; January 12, 2002: 35 hours; March 23, 2002: 21 hours; March 30, 2002: 21 hours; August 10, 2002: 21 hours; August 17, 2002: 35 hours; November 2, 2002: 21 hours; November 9, 2002: 21 hours; April 12, 2003: 21 hours; and April 19, 2003: 21 hours.

NOT FOR PUBLICATION

that he produced. At the time of the deposition, Mr. Brown stated that he had not reviewed the work schedule documents he gave to Plaintiff's counsel. Plaintiff argues that Mr. Brown cannot submit a certification about documents that he could not testify about during his deposition.

Defendant has met his burden of producing evidence that Plaintiff did not work from May 31, 2003 to October 2, 2003. Plaintiff's claim that the documents are inadmissible is false. Although a party moving for summary judgment may only rely on evidence that would be admissible at trial, the evidence need not be in admissible form at the summary judgment stage. See Pamintuan v. Naticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999); Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267 (3d Cir. 1995) (hearsay statements only need to be *capable* of being admissible at trial to be considered during summary judgment).

Under the Federal Rules of Evidence, records are admissible if made in the course "of regularly conducted activity . . . if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record[s]." Fed. R. Evid. 803(6). The only requirement is that a custodian or qualified witness certifies that the record "was made at or near the time of the occurrence of the matters set forth; . . . was kept in the course of the regularly conducted activity; and was made by the regularly conducted activity as a regular practice. Fed. R. Evid. 902(11). Even if Mr. Brown was not prepared to certify the record at the time of his deposition, the attendance records are still admissible so long as a custodian can certify them at trial. Accordingly, it is proper for the Court to consider the records in Defendant's motion for summary judgment.

Plaintiff has not offered any evidence that there is an issue of material fact regarding

**NOT FOR PUBLICATION**

Caminiti's vacation and sick days. Accordingly, summary judgment is granted and Plaintiff's

claim for overtime between May 31, 2003 and October 2, 2003 is dismissed.

**CONCLUSION**

  For the foregoing reasons, the Court denies the County's motion for summary judgment

on the whole complaint, and the partial motions for summary judgment are granted in part and

denied in part. An appropriate order will follow.

               s/William H. Walls
             **William H. Walls, U.S.D.J.**